IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:

ARTHUR GILT FARMS, LLC,   )   Case No. 10-05120-AJM-11
                          )
    Debtor.              )   Chapter 11
                          )

**AFFIDAVIT OF WILLIAM J. ARTHUR**
**IN SUPPORT OF FIRST DAY MOTIONS**

Pursuant to 28 U.S.C. § 1746, William J. Arthur declares and states as follows:

1. I am the President of Arthurs, Inc. Arthurs, Inc. is one of the members of Arthur Gilt Farms, LLC ("Debtor"). I am familiar with the Debtors' corporate structure, assets, day-to-day operations, business affairs and capital structure. I have reviewed the Debtors' financial statements, business records and other relevant documents. All facts set forth herein are based on my personal knowledge and my independent review and investigation, as described above. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2. Debtor operates a hog farming operation in Greenfield, Hancock County, Indiana.

3. On or about April 12, 2010, the members of Debtor authorized and directed me to file a voluntary petition for Debtor pursuant to the provisions of 11 U.S.C. § 101 *et seq.*, (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Indiana.

4. The Debtor intends to operate its businesses and manage its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

**DEBTOR'S BUSINESS**

5. Debtor was formed in 1994 as an Indiana limited liability company. The members of Debtor are Signature Farms, Inc. and Arthurs, Inc. Each holds a 50% membership interest. Debtor

currently has approximately 10 employees who are paid monthly, in arrears. Debtor is in the business of breeding and producing hogs. Debtor's indebtedness consists primarily of approximately $2.3 milion owed to First Farmers Bank ("Bank"), and approximately $1.2 million owed to trade and other unsecured creditors.

## EVENTS LEADING TO THE FILING OF THE DEBTOR'S PETITION

6. The hog market is a volatile one, with prices for hog products fluctuating on a daily, if not hourly basis. Costs for producing hogs also fluctuate with increases in costs for hog feed, supplies and petroleum products. Hog producers nationwide have suffered billions of dollars in losses over the last several years dating back to 2007. Many hog producers have not been able to weather these losses and have dropped out of the market.

7. Debtor believes it can survive and return to profitability, but not without an adjustment of its debts.

## REQUESTED FIRST DAY RELIEF

8. I have read each of the First Day Motions[1], and the factual allegations set forth in the First Day Motions are incorporated herein by reference. The relief requested in the First Day Motions, as generally discussed below and as more fully set forth in the First Day Motions, will enable the Debtor to efficiently handle its chapter 11 case, effectively reorganize its operations and assets, and minimize the disruption caused by such events on creditors, employees and the public-at-large. Accordingly, the Debtor submits that the relief requested in the First Day Motions is necessary to avoid immediate and irreparable harm to the Debtor, its employees and the estate, is in the best interest of creditors and employees, and should be granted.

---

[1] Any capitalized term not expressly defined herein shall have the meaning ascribed to such term in the relevant First Day Motion.

H&K 154373v1

2

### A. Cash Use

9. On the date hereof, Debtor is filing a First Day Emergency Motion for Entry of Interim Order (i) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. §363, and (ii) Granting Adequate Protection to Pre-Petition Secured Lender Pursuant to 11 U.S.C. §361 (the "Cash Use Motion") wherein Debtor requests authority to continue to use certain cash collateral of Bank.

10. Debtor has an immediate need to use cash collateral which is the subject of the liens in favor of the Bank, in order to permit, among other things, the orderly continuation of the operation of Debtor's business, to pay employees, to maintain business relationships with vendors and suppliers and to satisfy other working capital needs. Use of cash collateral is necessary to prevent the immediate and irreparable harm to Debtor and its estate that would otherwise result if Debtor is prevented from obtaining use of cash collateral for the foregoing purposes.

11. All of Debtor's cash, cash equivalents and cash on deposit as of the Petition Date and all proceeds of Debtor's personal property securing Debtor's obligations to the Bank, among other things, might constitute "cash collateral" (as that term is defined in section 363(a) of the Bankruptcy Code) of the Bank.

12. The Bank might be entitled to adequate protection of its interests in Debtor's personal property, including any cash collateral thereof, for any diminution in value of such property or cash collateral, including any diminution resulting from the use of cash collateral and the imposition of the automatic stay. Debtor believes, in an exercise of its prudent business judgment, that the adequate protection given by the proposed payments to the extent, validity and priority of the Bank's pre-petition liens, that the granting of replacement liens is fair, reasonable and necessary under the circumstances.

13. It is vital to Debtor's continued operations to be able to use the Bank's cash collateral to

**B. Motion to Continue Utility Service**

14. On the date hereof, Debtor is filing a First Day Motion for Entry of Order Under 11 U.S.C. §366(A) Prohibiting Utilities from Altering, Refusing or Discontinuing Services, and (B) Determining Adequate Assurances of Payment for Future Services ("Utilities Motion") in which they seek entry of an order prohibiting any of their utility creditors from altering, refusing or discontinuing utility services.

15. The Debtor's hog producing activities and corporate functions require use of machinery and equipment related to swine care and production, computers, copiers and other equipment. Accordingly, the Debtor's operations are dependent on continued utility services. An interruption of utility service would severely disrupt the Debtor's business operations and would thwart the purpose of the Debtor's chapter 11 case.

16. Debtors believe that the rights of the Utility Companies will not be prejudice by the granting of the relief requested in the Utilities Motion and that the proposed adequate assurance of Debtor's payment is sufficient and in keeping with adequate assurances given to utilities in similar chapter 11 cases.

**D.  Motion to Pay Pre-Petition Wages and Expenses**

17. On the date hereof, Debtor is filing Debtor's First Day Motion for Authority to Pay Pre-Petition Employee Wages ("Pay Motion") in which the Debtor seeks authority to pay certain pre-petition employee wages.

18. Debtor's employees are paid monthly in arrears. The next payroll for the month of April

19. A portion of the payroll to be paid on or about April 30, 2010 was earned by employees prior to the Petition Date, and thus the employees have a priority claim for unpaid salary and wages under section 507(a)(4) of the Bankruptcy Code.

20. Employees with technical skills, knowledge and understanding of the Debtor's business are a valuable asset and are essential to the Debtors' business and ongoing operations. Employees' continued loyalty and productivity are essential to the Debtors' efforts to reorganize. Absent an order granting the requested relief in the Pay Motion, many employees will suffer undue hardship and, in many instances, face serious financial difficulties.

### E. Motion to Pay Certain Pre-Petition Insurance Premiums.

21. On the date hereof, Debtor is filing Debtor's First Day Motion for Authority to Pay Workers' Compensation, Property Insurance and Business Liability Insurance (the "Insurance Motion") wherein Debtor seeks authority to pay certain prepetition insurance claims.

22. It is necessary and essential to the Debtor's operation that insurance coverage be maintained for the protection of the business. Payment of the foregoing is necessary and essential to the Debtor's continued operations and is required by the United States Trustee's office for the Debtor's operation as a debtor-in-possession.

23. Payment of the Debtors' property and business premiums and maintenance of property and business insurance will protect the Debtors' estates in the event that an unforeseen catastrophic loss occurs.

### F. Motion for Authority to Maintain and Use Existing Accounts, System and Forms.

24. Notwithstanding the United States Operating Guidelines for debtors in chapter 11 cases, the Debtor has an immediate need to continue using its existing bank accounts and the Debtor's cash

H&K 154373v1

25. By preserving business continuity and avoiding monumental disruption and delay to payroll and daily business operations that would necessarily result from the closing of the bank accounts and the opening of new bank accounts, all parties in interest, including the Debtor's employees, vendors and customers, will be best served by continuing to maintain the bank accounts. The benefit to the Debtor's estate will be considerable by eliminating the confusion that would otherwise result absent the relief requested herein.

26. In addition, to minimizing expenses to the Debtor's estate, the Debtor requests authorization to continue to use the current correspondence and business forms, including, but not limited to, invoices, purchase orders and related vendor communications and documents, letterhead, envelopes, promotional materials, order forms and other business forms (collectively, the "Business Forms"), substantially in the form existing immediately before the Petition Date, without reference to the Debtor's status as debtor(s) in possession.  It is believed that because of the relatively small size of the hog producing community, parties doing business with the Debtor will undoubtedly be aware of the Debtor's status as a chapter 11 debtor-in-possession.

27. If the Debtor is not permitted to maintain and utilize the current bank accounts and continue to use the existing Business Forms, they will be adversely impacted by (i) the resulting disruption to the Debtor's ordinary financial affairs and business operations, (ii) the delay of the administration of the Debtor's estate and (iii) the incurrence of unnecessary costs to the estate.

## CONCLUSION

28. The relief sought in Debtor's First Day Motions is in the best interests of the Debtor's estate, its employees and creditors, and will assist the Debtor in efficiently handling this chapter 11 case.

**<u>I declare under penalty of perjury that the foregoing is true and correct</u>**.


Signed the 12th day of April, 2010

<u>/s/ William J. Arthur</u>
William J. Arthur
