SO ORDERED: June 04, 2010.



_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:                         )
                               )
ARTHUR GILT FARMS, LLC         )     Case No. 10-05120-AJM-11
                               )
    Debtor.                    )

### CONTINUED INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL FOR OPERATING EXPENSES, AND GRANTING REPLACEMENT LIENS, AND NOTICE OF CONTINUED HEARING

This matter came on before the Court on May 24, 2010, on the Debtors' First Day Motion for Authority to Use Cash Collateral for Operating Expenses, and Granting Replacement Liens, and Request for Emergency Hearing (the "Motion"), filed by Arthur Gilt Farms, LLC, debtor and debtor-in-possession (collectively, the "Debtor"). An Interim Order Authorizing Debtor's Use of Cash Collateral for Operating Expenses, and Granting Replacement Liens, and Notice of Interim Hearing was entered by the Court on April 27, 2010 (the "Interim Order") following notice to the United States Trustee, First Farmers Bank & Trust ("First Farmers"), and the twenty largest unsecured creditors of the Debtor. Pursuant to the Interim Order, a final hearing on the

Motion was scheduled for May 24, 2010 at 3:00 p.m. The Court, having conducted a hearing on and considering the Motion, and being duly advised, now finds the following:

### Notice and Hearing

1. Notice of the Motion has been given in accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure, which notice is sufficient for all purposes under the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure in respect of the relief requested in the Motion.

2. On April 19, 2010, the Court conducted the Interim Hearing at which counsel for the Debtor, counsel for First Farmers and counsel for the U.S. Trustee were present. On May 24, 2010, the Court conducted a continued Hearing at which counsel for the Debtor, First Farmers and the U.S. Trustee were also present. At the continued Hearing, the represented parties informed the Court that an agreement concerning the Debtors' interim use of cash collateral through and including September 30, 2010 had been reached, the terms of which are incorporated into this Order.

3. The U.S. Trustee reported to the court on May 6, 2010, that the Trustee was unable to appoint a person willing to serve on an unsecured creditors committee. As a result, no official creditors committee, as provided for under Section 1102 of the Bankruptcy Code, has been appointed as of the date of this Order.

### Background

4. The Debtor filed its voluntary Chapter 11 petition on April 12, 2010 (the "Petition Date"), and is operating its business and managing its properties as debtor-in-possession under Bankruptcy Code §§ 1107(a) and 1108. No trustee or examiner has been appointed in this Chapter 11 case.

2

5.　As of the Petition Date, First Farmers has asserted first priority secured claims against the Debtor in the principal amount of not less than $2,304,606.31 (the "Pre-Petition Obligations"), by virtue of, among other things, (a) a Promissory Note from Debtor dated August 28, 2008 in the original principal amount of $300,000.00 (the "First Note"); (b) a Promissory Note from Debtor dated March 9, 2009, in the original principal amount of $450,000.00 (the "Second Note"); (c) a Promissory Note from Debtor dated March 9, 2009, in the original principal amount of $1,900,000.00 (the "Third Note"); a Promissory Note from Debtor dated August 28, 2008, in the original principal amount of $200,000.00 (the "Fourth Note"), (the First Note, Second Note, Third Note and Fourth Note are hereinafter referred to collectively as the "Notes"); (d) a Security Agreement dated October 16, 2007 from Debtor in favor of First Farmers granting a security interest in substantially all of the assets of Debtor (the "Security Agreement"); a certain Account Control Agreement dated August 26, 2008, from Debtor in favor of First Farmers granting a security interest in a hedge account titled in the name of the Debtor and established by a Commodity Intermediary (the "Control Agreement") and (e) a certain real estate Mortgage, Security Agreement, Assignment of Rents and Fixture Filings dated November 5, 2007, and recorded November 20, 2007 as Instrument No. 070013124 in the Office of the Recorder of Hancock County, Indiana (the "Mortgage") (the Notes, Security Agreement, the Control Agreement and the Mortgage, and all other instruments and documents evidencing and/or securing the Pre-Petition Obligations, are hereinafter referred to as the "Loan Documents").

6.　First Farmers has asserted that the Pre-Petition Obligations are secured by duly perfected first priority security interests and liens (the "Pre-Petition Liens") in substantially all of the Debtors' business assets and real estate, with priority over all liens, claims, and interests of

all other persons and entities including Debtors (the "Pre-Petition Collateral"); that the Pre-Petition Obligations constitute allowable claims under Sections 502 and 506 of the Bankruptcy Code; and the Pre-Petition Obligations are due and payable without defense, set off, or counterclaim.

7. The proceeds of certain of the Pre-Petition Collateral constitute cash collateral as defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral"). As of the Petition Date, the Debtors had cash in the sum of approximately $71,079.41, plus accounts for the sale of inventory and farm products for which payment has not been received as of the Petition Date, and supplies, farm products and inventory in the approximate aggregate sum of $1,596,970.85 which is Cash Collateral within the meaning of 11 U.S.C. §363(c)(2).

### The Motion

8. In the Motion, the Debtor seeks authorization to use the Cash Collateral. The Debtor asserts that it requires the use of the Cash Collateral in order to continue to operate its business. Without the use of Cash Collateral, the Debtor's estate will suffer irreparable harm in that the value of the Debtor's assets will diminish, and the Debtor will not be able to preserve the value of its assets. Accordingly, the Debtor has requested that First Farmers allow it continued use of Cash Collateral in the operation of its business.

9. The Debtor lacks unencumbered assets to operate its business post-petition.

10. The Debtor has prepared a cash flow projection attached as Exhibit "A" (the "Budget") which shows the Debtor's anticipated use of cash collateral for a six (6) month period of time beginning April 1, 2010.

11. First Farmers is willing to allow the Debtor to use Cash Collateral, subject to the agreed terms, conditions, and limitations set forth in this Order (the "Order"). It is in the best

interest of the Debtor, the Debtor's estate, and its creditors for the Debtor to be allowed to use the Cash Collateral of First Farmers on the conditions set forth herein.

12.     The covenants and agreements contained in the Loan Documents shall remain valid and enforceable and are incorporated into this Order by reference, except to the extent that they are inconsistent with the terms of this Order, in which event the terms of this Order shall control.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

A.     The Debtor is hereby authorized to use the Pre-Petition Collateral, including the Cash Collateral, in conformity with the Budget. The Debtor shall be authorized to expend funds on those categories and for amounts not to exceed those identified in the Budget and required payments to the United States Trustee without further order of the Court; provided, however, that if First Farmers, in its sole discretion, approves in writing any additional expenditure not included in the Budget, the Debtor may use the Cash Collateral in accordance with such written approval without further order of the Court.

B.     In order to provide First Farmers with adequate protection with respect to any decrease in the value of its interest in the Pre-Petition Collateral, among other things, resulting from the stay imposed under Section 362 of the Bankruptcy Code or the use of such property, including Cash Collateral by the Debtors (such decrease in value being referred to as the "Adequate Protection Claim"), and to secure the Adequate Protection Claim, First Farmers is granted a security interest and lien (the "Replacement Lien") upon all of the Debtor's post-petition property and assets of any kind and nature and the proceeds thereof, of the same nature and to the same extent and in the same priority that First Farmers had secured interests in the pre-petition property of the Debtor as of the

5

Petition Date, which Replacement Lien is in addition to the Pre-Petition Liens (the Pre-Petition Collateral and the collateral for the Replacement Lien described above is hereafter collectively referred to as the "Collateral").

C.　Except as expressly set forth in this Order, the liens and security interests granted to First Farmers in this Order shall not be subordinated to or made *pari passu* with any other lien under Section 364(d) of the Bankruptcy Code or otherwise.

D.　In the event that the protections provided by the liens, security interests and encumbrances herein created in favor of First Farmers by any means turn out, in retrospect, to have been inadequate, the full amount of any deficiency owed to First Farmers shall be entitled to the super priority afforded by § 507(b) of the Bankruptcy Code, over all administrative expenses, other than fees payable to the United States Trustee and counsel for Debtor and the Official Creditors' Committee in an amount not to exceed $7,500.00 (the "Carve Out") and as allowed by the Court provided, however, that the Carve Out shall not include, apply to or be available for any fees or expenses incurred by any party, including the Debtor or any Committee, or their professionals, in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against First Farmers, including, without limitation, challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the Debtor's obligations thereto, or any liens securing such obligations.

E.　The rights and obligations of the Debtor and the rights, claims, security interests, liens and priorities of First Farmers arising under this Order and the Post-Petition Financing Documents (as hereinafter defined), if any, are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities existing as of the Petition Date.

F.   Debtor shall execute such notes, security agreements, and other documents as First Farmers may request, to effectuate this Interim Order, or to evidence, confirm, validate or perfect the liens, security interests, debts and obligations granted pursuant to this Interim Order (any and all such documents, along with any post-petition financing statements filed by First Farmers, are hereafter referred to, collectively, as the "Post-Petition Financing Documents"). Nevertheless, the entry of this Order shall operate to evidence the Debtors' indebtedness to First Farmers and perfect First Farmers' security interests granted herein without First Farmers' further act. If First Farmers chooses to file financing statements or other documents or otherwise confirm perfection of its security interests granted herein, all such financing statements or other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Debtors' bankruptcy case. For purposes of this paragraph, the automatic stay of § 362 of the Bankruptcy Code is hereby modified, vacated and lifted as against First Farmers.

G.   As a condition for the use of Cash Collateral, the Debtor shall make the payment to First Farmers as described in the Budget. Additionally, Debtor shall pay any and all real estate taxes and personal property taxes assessed with regard to the Collateral, as and when such items become due. Any and all payments or proceeds remitted, or deemed to be remitted, to First Farmers pursuant to the provisions of this Order shall be received, or deemed received, by First Farmers for the benefit of First Farmers free and clear of any claim, charge, assessment or other liability including, without limitation, any claim or charge arising out of or based on Sections 506(c) or 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived by the Debtor.

H.   Consistent with the Loan Documents and in consideration of First Farmers' consent to the Debtor's use of Cash Collateral, Debtor shall pay or reimburse First Farmers for all

7

costs and expenses (including, without limitation, all filing and recording fees and reasonable attorneys' and paralegal fees and expenses) incurred by First Farmers before or after the Petition Date: (i) in connection with the preparation of the Motion, the First Day Order, the Interim Order and related instruments, documents and agreements including the perfection of First Farmers' security interests; (ii) in the representation of First Farmers in Debtor's bankruptcy case including but not limited to those services and expenses incurred in connection with any adversary proceeding, contested matter, discovery, sale(s) of assets, plan of reorganization, or otherwise; (iii) in the monitoring of all loans by First Farmers to the Debtor; (iv) in enforcing First Farmers' rights and remedies with respect to the Collateral; and (v) in paying any cost or expense for which Debtors would otherwise be obligated under the Loan Documents ("First Farmers Expenses"). First Farmers may debit any bank account of the Debtor with First Farmers to pay the First Farmers Expenses as and when invoiced to First Farmers.

I.  The extent, validity, perfection and enforceability of the Pre-Petition Obligations, Pre-Petition Liens, the Loan Documents, and First Farmers' interest in the Pre-Petition Collateral, as of the Petition Date, are valid and binding agreements and obligations of the Debtors, the liens and security interests of First Farmers in the Pre-Petition Collateral are valid, perfected, enforceable liens not subject to subordination and otherwise non-avoidable, and the Pre-Petition Obligations are allowable and are valid, enforceable and non-avoidable secured claims pursuant to Sections 506(a) and (b) of the Bankruptcy Code, in the amount set forth in the books and records of First Farmers, and the Debtor do not possess, and may not assert, any claim, counterclaim, setoff defense, offset or recoupment of any kind or nature, unless a party in interest, within ninety (90) days of the date of this Order files a complaint, pursuant to Bankruptcy Rule 7001, to invalidate, avoid, modify, reduce or subordinate the Pre-Petition

8

Obligations and First Farmers' liens on the Pre-Petition Collateral and/or to object to the extent, validity, enforceability, or perfection of First Farmers' Pre-Petition Liens, and the Court ultimately rules in favor of the party in interest on such complaint.

J.   No consent by First Farmers to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to First Farmers or its interests in the Collateral pursuant to the provisions of Section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtor shall be implied from any action, inaction or acquiescence by First Farmers or otherwise. Except as set forth herein, First Farmers has not consented or agreed to the use of the Cash Collateral, the Collateral, or their proceeds.

K.   If any payroll is paid from the Cash Collateral, the Debtor hereby expressly indemnifies and holds harmless First Farmers from and against any liabilities, including costs and attorneys' fees, resulting from any claims or demands made by the United States government pursuant to the provisions of the Federal Tax Lien Act of 1966 for withholding and FICA taxes incurred during the operation of Debtor's business.

L.   Nothing in this Order, including the Budget, shall constitute or be construed as a consent, acknowledgment or agreement by First Farmers or constitute a waiver or estoppel with respect to the rights of First Farmers to dispute the validity or accuracy of the Debtor's calculations or any contentions with respect to collateral values or adequate protection based thereon. First Farmers shall not be deemed to be in control of the operations of the Debtor by virtue of the interests, rights, and remedies granted to or conferred upon First Farmers under the Loan Documents, the Post-Petition Financing Documents, and/or this Order.

M.   Representatives of First Farmers may enter upon the premises of the Debtor at any time during the Debtor's business hours, upon reasonable notice to the Debtor and provided

9

that such presence does not unduly interfere with the Debtor's operations. Such representative may observe the Debtor's compliance with the terms and provisions of this Order, and the Loan Documents, but shall not in any respect participate in the management of the day-to-day business operations of the Debtor. The Debtor shall use its best efforts to accommodate First Farmers with the observation permitted hereby.

N.    In addition, the Debtor shall provide to First Farmers all reports and financial information required by the Loan Documents, and shall in good faith and in a reasonably prompt manner: (i) provide to First Farmers the financial reports submitted to the United States Trustee's Office, and such other information as First Farmers may from time to time request; (ii) answer inquiries and requests of First Farmers and its professionals for information, and/or documentation; (iii) provide full cooperation and information to First Farmers as to the value and description of the assets of Debtor and the sale or liquidation of those assets; and (iv) provide First Farmers with monthly cash flow detail reports within one (1) week following the end of each month.

O.    The Debtor shall maintain and manage its business and operations in the ordinary course under the current circumstances, including without limitation the maintenance of adequate insurance coverage with respect to loss of or damage to the Collateral with First Farmers named as a loss payee on all such policies. The Debtor shall make every reasonable effort to insure the collection of all pre-petition and post-petition accounts and to preserve, maintain and protect the Collateral and the proceeds thereof.

P.    The terms of this Order will expire on the date (the "Termination Date") that is the earlier of:

(a)    The date first set for the Hearing as contemplated in paragraph BB below;

10

  (b)  The entry of an order by any court modifying, amending, vacating or staying any provision of this Order;

  (c)  The voluntary or involuntary dismissal of Debtor's bankruptcy case;

  (d)  The appointment of a Chapter 11 Trustee or Examiner;

  (e)  The conversion of the case to one under Chapter 7 of the Bankruptcy Code;

  (f)  The entry of an Order confirming a Chapter 11 Plan of Reorganization;

  (g)  The occurrence of an Event of Default as defined below; or

  (h)  September 30, 2010.

Notwithstanding any other term or condition of this Order, or the Loan Documents, as of the Termination Date, First Farmers shall be under no obligation to permit the Debtor to use any Cash Collateral unless, prior to the Termination Date, First Farmers and the Debtor submit a supplemental agreed order governing such post-petition use of cash collateral, and such agreed order has been entered and approved by the Court. All of the liens and security interests granted to First Farmers herein shall survive the Termination Date.

  Q.  Any of the following shall constitute Events of Default under the terms of this Interim Order:

  (a)  Any failure by the Debtor to timely make any payment due to First Farmers under this Order.

  (b)  The Debtor fails to timely provide any of the reports required by Paragraph N of this Order, or by the Loan Documents.

  (c)  The Debtor makes any material payment not set forth in the Budget or not previously approved by First Farmers.

  (d)  The Debtor sells or agrees to sell any of the Debtor's assets, other than sales of inventory or farm products made in the ordinary course of business, without (I) First Farmers' consent, or (II) an appropriate order from this Court.

(e) The Debtor shall fail to comply with any other term or condition of this Order.

R. Upon the occurrence of an Event of Default, as defined above, First Farmers shall have the right, without further order of the Court or notice to the Debtor, to exercise the rights granted it under this Order and the Loan Documents, as to all or such part of the Collateral as First Farmers in its sole discretion shall elect, including the right to take possession of and sell the Collateral in accordance with the terms of the Uniform Commercial Code to satisfy the Pre-Petition Obligations, and all other rights and remedies at law and equity upon notice to Debtor of First Farmers' election and on expedited hearing to be conducted by this Court at the Court's earliest available time. Debtor waives any objection in the event that hearing may be held less than three (3) business days from the date of such notice. For such purpose, the automatic stay of Section 362 of the Bankruptcy Code is hereby modified and vacated as against First Farmers. Immediately following the occurrence of an Event of Default, First Farmers may, in its discretion, sue any party to recover or collect the Collateral. In such event, First Farmers may sue in the name of Debtor, and counsel for First Farmers is hereby authorized to act as special counsel for Debtor and First Farmers, as their interests may appear, for the purpose of recovering or collecting the Collateral if the Debtor does not undertake to do so within ten (10) days after a written request from First Farmers. Additionally, after an Event of Default, First Farmers may apply to this Court in the name of Debtor and on its own behalf, for an Order confirming the sale, lease or other disposition of the Collateral upon ten (10) days' notice to parties entitled to notice.

S. First Farmers, in its sole discretion, shall have the right to forbear from pursuing or enforcing any of the rights, remedies or powers granted herein or in the Loan Documents. Delay in or failure to exercise any rights or remedies shall not constitute a waiver of any such

rights, remedies or powers nor shall such forbearance subject First Farmers to any liability to any other party, nor shall any other party rely upon or in any way seek to assert such delay or failure as a defense to any obligations owing to First Farmers.

T.  Upon the occurrence of the Termination Date, the principal, accrued interest, professional fees and expenses incurred by First Farmers, and all other amounts owed to First Farmers under the Loan Documents shall be immediately due and payable and First Farmers shall have all other rights and remedies provided in the Loan Documents, the Post-Petition Financing Documents, and this Interim Order.

U.  In no event shall First Farmers be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral or otherwise.

V.  Notwithstanding anything to the contrary herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of First Farmers under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of First Farmers to (i) request additional adequate protection of its interests in Collateral or relief from or modification of the automatic stay under §362 of the Bankruptcy Code, (ii) request conversion of this Chapter 11 Case to Chapter 7, and (iii) propose, subject to the provisions of § 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of First Farmers.  Nothing in this Order shall in any way affect the rights of First Farmers against third parties.   In taking any action reasonably related to the Loan Documents, or this Order, First Farmers shall have no liability to the Debtor or any third party.

W.  In the event any or all of the provisions of this Order are hereafter modified, amended, stayed or vacated by a subsequent order of this or any other Court, no such modification,

amendment, stay or vacation shall affect the validity and enforceability of any obligation, debt, lien, security interest or priority authorized or created hereby. Notwithstanding any such modification, amendment, stay or vacation, any claim granted to First Farmers hereunder arising prior to the effective date of such modification, amendment, stay or vacation shall be governed in all respects by the original provisions of this Order and First Farmers shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to any such claim.

X. The provisions of this Order shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns, and all other parties in interest in this bankruptcy case. The obligations of the Debtor with respect to the Pre-Petition Obligations shall not be modified or discharged by the entry of an order confirming a plan of reorganization in this case, except as otherwise consented to by First Farmers.

Y. The terms and conditions contained in this Order have been negotiated, agreed to, and the terms thereof promulgated, in good faith and at arms length between the Debtor, and First Farmers, with all parties represented by counsel. This Order and related documents represent good faith transactions that are in the best interests of the Debtor's estate. The security interests and liens and priorities granted under this Order are entitled to the benefits and protections of the Bankruptcy Code.

Z. All rights and remedies conferred herein and all waivers made hereby shall be binding upon all parties in interest including but not limited to all secured creditors and lienholders.

AA. Time is of the essence to the parties' agreement to perform as set forth in this Order.

BB.     A Final hearing on the Motion shall be held on September 23, 2010 at 9:00 a.m., in Room No. 311 at the United States Bankruptcy Court, 116 U.S. Courthouse, 46 E. Ohio Street, Indianapolis, Indiana, 46204 (the "Hearing").  Any creditor or other interested party having any objection to this Order or the Motion shall file a written objection with the Clerk, United States Bankruptcy Court, P.O. Box 44978, Indianapolis, Indiana 46244, and serve it upon counsel for the Debtor, Gary Lynn Hostetler and Mark A. Drummond, HOSTETLER & KOWALIK, P.C., 101 W. Ohio Street, Suite 2100, Indianapolis, Indiana 46204, and counsel for First Farmers, Ronald W. Buchmeier, HOPPER BLACKWELL, P.C., 111 Monument Circle, Suite 452, Indianapolis, Indiana 46204, not later than three (3) days prior to the Hearing.

CC.     Debtors shall serve a copy of this Order and Notice by first-class mail within one (1) business day from the date hereof, on the Office of the United States Trustee, Secured Creditors, the Debtors' Twenty Largest Unsecured Creditors, and those parties that have appeared in this case.

DD.     This Order is being entered as an interim order pending the Hearing and at that Hearing the Court may continue, not continue or may modify any provision in this Order.

SO ORDERED.

###

Name: Arthur Gilt

| | | | November | December | January | February | March | April | May | June | July | August | Sept | Oct | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CASH RECEIPTS | | | | | | | | | | | | | | | |
| *** livestock *** | | | | | | | | | | | | | | | |
| | Head | Price/cwt | | | | | | | | | | | | | |
| 16 Strout | | | | | | | | | | | | | | | $0 |
| 17 Home raised hogs | | | 100,501 | 73,339 | 111,532 | 81,388 | 118,886 | 86,754 | 128,691 | 97,934 | 132,666 | 95,251 | 132,666 | 95,251 | 1,254,899 |
| 18 | | | | | | | | | | | | | | | |
| 19 Weaner pigs | | | 17,000.00 | 42,500.00 | 17,000.00 | 42,500.00 | 17,000.00 | 42,500.00 | 17,000.00 | 42,500.00 | 17,000.00 | 42,500.00 | 17,000.00 | 42,500.00 | 357,000 |
| 20 Gilt sales | | | 84,203 | 84,203 | 90,077 | 90,077 | 93,993 | 93,993 | 99,214 | 102,151 | 101,342 | 100,193 | 101,342 | 100,193 | 1,140,983 |
| 21 *** TOTAL LIVESTOCK INCOME *** | | | $201,705 | $200,042 | $218,609 | $213,965 | $229,879 | $223,247 | $244,905 | $242,585 | $251,028 | $237,944 | $251,028 | $237,944 | 2,752,882 |
| 22 *** other cash receipts *** | | | | | | | | | | | | | | | |
| 23 | | | | | | | | | | | | | | | |
| 24 | | | | | | | | | | | | | | | |
| 25 | | | | | | | | | | | | | | | |
| 26 | | | | | | | | | | | | | | | |
| 27 | | | | | | | | | | | | | | | |
| 28 | | | | | | | | | | | | | | | |
| 29 other income | | | | | | | | | | | | | | | |
| 30 *** TOTAL OTHER CASH RECEIPTS *** | | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | - |
| *** capital sales *** | | | | | | | | | | | | | | | |
| | no. | type | | | | | | | | | | | | | |
| 31 Cull sows | 40 | $150 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | 72,000 |
| 32 | | | | | | | | | | | | | | | |
| 33 | | | | | | | | | | | | | | | |
| 34 | | | | | | | | | | | | | | | |
| 35 *** TOTAL CAPITAL SALES INCOME *** | | | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | 72,000 |
| 36 **** GRAND TOTAL INCOME **** | | | $207,705 | $206,042 | $224,609 | $219,965 | $235,879 | $229,247 | $250,905 | $248,585 | $257,028 | $243,944 | $257,028 | $243,944 | 2,824,882 |

EXHIBIT A

| | Name: | Arthur Gilt | Typical Cash Flow | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | November | December | January | February | March | April | May | June | July | August | Sep | Oct | TOTALS |
| | CASH EXPENSES | | | | | | | | | | | | | | |
| 52 | *** other expenses *** | | | | | | | | | | | | | | $0 |
| 53 | Property Taxes | | | | | | | | | | | | | | $0 |
| 54 | Insurance | | | | | | | | | | | | | | $0 |
| 55 | Accounting | | | | | | | | | | | | | | $0 |
| 56 | | | | | | | | | | | | | | | $0 |
| 57 | | | | | | | | | | | | | | | $0 |
| 58 | | | | | | | | | | | | | | | $0 |
| 59 | | | | | | | | | | | | | | | $0 |
| 60 | | | | | | | | | | | | | | | $0 |
| 61 | | | | | | | | | | | | | | | $0 |
| 62 | Finishing Expenses | | $156,354 | $156,354 | $156,354 | $156,354 | $156,354 | $156,354 | $156,354 | $156,354 | $156,354 | $156,354 | $156,354 | $156,354 | $1,876,248 |
| 63 | Weaner Expense | | $29,750 | $29,750 | $29,750 | $29,750 | $29,750 | $29,750 | $29,750 | $29,750 | $29,750 | $29,750 | $29,750 | $29,750 | $357,000 |
| | *** livestock purchases *** | | | | | | | | | | | | | | $0 |
| | # head | cost/head | type | | | | | | | | | | | | |
| 80 | 600 | $50.00 | Elmcreek | $5,000 | | $5,000 | | $5,000 | | $5,000 | | $5,000 | | $5,000 | $0 | $30,000 |
| 81 | | | | | | | | | | | | | | | $0 |
| 82 | | | | | | | | | | | | | | | $0 |
| 83 | | | | | | | | | | | | | | | $0 |
| 84 | *** TOTAL OPERATING EXPENSES *** | | $191,104 | $186,104 | $191,104 | $186,104 | $191,104 | $186,104 | $191,104 | $186,104 | $191,104 | $186,104 | $191,104 | $186,104 | $2,263,248 |

EXHIBIT A

| Name: | Arthur Gill | | amount | | November | December | January | February | March | April | May | June | July | August | Sep | Oct | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 85 | *** CAPITAL EXPENSE *** | | | | | | | | | | | | | | | | |
| 86 | machinery and equipment | | | | | | | | | | | | | | | | |
| 87 | | | | | | | | | | | | | | | | | |
| 88 | | | | | | | | | | | | | | | | | |
| 89 | *** TOTAL CAPITAL EXPENSE *** | | | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | - |
| 90 | *** OPERATING LOAN INTEREST *** | | | | | | | | | | | | | | | | |
| 91 | *** LIVING EXPENSE *** | | | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | - |
| | *** LOAN REPAYMENT *** | | | | | | | | | | | | | | | | |
| | name of lender | | amount | | | | | | | | | | | | | | |
| 92 | FFBT | 72 months | $ 600,000 | principal | $ 6,519 | $ 6,563 | $ 6,607 | $ 6,651 | $ 6,695 | $ 6,740 | $ 6,785 | $ 6,830 | $ 6,876 | $ 6,921 | $ 6,967 | $ 7,014 | $ 81,168 |
| 93 | | | 10,519 | interest | $ 4,000 | $ 3,956 | $ 3,912 | $ 3,868 | $ 3,824 | $ 3,779 | $ 3,735 | $ 3,689 | $ 3,644 | $ 3,598 | $ 3,552 | $ 3,505 | $ 45,062 |
| 94 | FFBT | 60 months | 1,400,000 | principal | $ 19,054 | $ 19,181 | $ 19,308 | $ 19,437 | $ 19,566 | $ 19,697 | $ 19,828 | $ 19,961 | $ 20,094 | $ 20,227 | $ 20,363 | $ 20,498 | $ 237,214 |
| 95 | | | 28,386 | interest | $ 9,333 | $ 9,205 | $ 9,078 | $ 8,949 | $ 8,820 | $ 8,689 | $ 8,558 | $ 8,426 | $ 8,293 | $ 8,159 | $ 8,024 | $ 7,888 | $ 103,423 |
| 96 | FFBT | 120 months | 250,000 | principal | $ 1,421 | $ 1,430 | $ 1,440 | $ 1,449 | $ 1,459 | $ 1,469 | $ 1,479 | $ 1,489 | $ 1,498 | $ 1,508 | $ 1,519 | $ 1,528 | $ 17,689 |
| 97 | | | 3,164 | interest | $ 1,733 | $ 1,724 | $ 1,714 | $ 1,705 | $ 1,695 | $ 1,685 | $ 1,676 | $ 1,666 | $ 1,655 | $ 1,646 | $ 1,635 | $ 1,625 | $ 20,169 |
| 98 | | | | principal | | | | | | | | | | | | | |
| 99 | | | | interest | | | | | | | | | | | | | |
| 100 | | | | principal | | | | | | | | | | | | | |
| 101 | | | | interest | | | | | | | | | | | | | |
| 102 | | | | principal | | | | | | | | | | | | | |
| 103 | | | | interest | | | | | | | | | | | | | |
| 104 | | | | principal | | | | | | | | | | | | | |
| 105 | | | | interest | | | | | | | | | | | | | |
| 106 | | | | principal | | | | | | | | | | | | | |
| 107 | | | | interest | | | | | | | | | | | | | |
| 108 | | | | principal | | | | | | | | | | | | | |
| 109 | | | | interest | | | | | | | | | | | | | |
| 110 | | | | principal | | | | | | | | | | | | | |
| 111 | | | | interest | | | | | | | | | | | | | |
| 112 | | | | principal | | | | | | | | | | | | | |
| 113 | | | | interest | | | | | | | | | | | | | |
| 114 | total loan repayment expense (92..113) | | | | $42,060 | $42,070 | $42,059 | $42,059 | $42,059 | $42,059 | $42,061 | $42,061 | $42,060 | $42,059 | $42,060 | $42,058 | $504,725 |
| 115 | total cash disbursements (84+89+90+91+114) | | | | $233,164 | $228,174 | $233,163 | $228,163 | $233,163 | $228,163 | $233,165 | $228,165 | $233,164 | $228,163 | $233,164 | $228,162 | $2,767,973 |
| 116 | total cash income (line 16) | | | | $207,705 | $206,042 | $224,609 | $219,965 | $235,879 | $229,247 | $250,905 | $248,585 | $257,028 | $243,944 | $257,028 | $243,944 | $2,824,882 |
| 117 | cash position (116-115) | | | | ($25,459) | ($22,132) | ($8,554) | ($8,198) | $2,716 | $1,084 | $17,740 | $20,420 | $23,864 | $15,781 | $23,864 | $15,782 | |
| 118 | operating loan balance | | | $0 | $25,459 | $47,591 | $56,145 | $64,343 | $61,627 | $60,543 | $42,803 | $22,383 | ($1,481) | ($17,262) | ($41,126) | ($56,909) | |

| | | | | |
|---|---|---|---|---|
| COVERAGE AS A PERCENTAGE OF GROSS INCOME | | | | |
| Gross Receipts | $ 2,824,882 | Beginning Line Bal. | | Total Interest: | $189,654 |
| Less Inventory Changes | | Ending Line Balance | | Total Principal | $336,071 |
| Less Expenses | $ 2,263,248 | Difference | | Total Debt Service | $504,725 |
| Available To Service Debt | $ 561,634 | Beginning Inven & Rec | | | |
| Debt Service | $ 504,725 | Ending Inventory | | | |
| Coverage Ratio | 111% | Change in Inven. | | | |
| | | | | |
| Excess Cash Margin | $ 56,909 | | | |

EXHIBIT A